IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ANDREA IRVIN                                         PLAINTIFF

VS.                         CIVIL ACTION NO: 5:10-cv-196-DCB-JMR

SOUTHERN SNOW MANUFACTURING, INC.;
SOUTHERN SNOW INTERNATIONAL, INC.;
ABC, and DEF                                        DEFENDANTS

                    MEMORANDUM OPINION AND ORDER

        This cause is before the Court on the defendant Southern Snow

Manufacturing, Inc.[1] ("Southern Snow")'s Motion to Dismiss for Lack

of Personal Jurisdiction **(docket entry 8)** pursuant to Fed.R.Civ.P.

12(b)(2); and on the defendant's Motion to Strike plaintiff's

Exhibit C to her response to the motion to dismiss **(docket entry

19)**.  Having carefully considered the motions and responses, the

memoranda of the parties and the applicable statutory and case law,

and having heard oral argument in open court on September 19, 2011,

the Court finds and orders as follows:

                        MOTION TO DISMISS

            I.   FACTS AND PROCEDURAL HISTORY

        Plaintiff Andrea Irvin ("Irvin") was injured by a shaved ice

machine that was manufactured and sold by the defendant.  Southern

Snow is a Louisiana corporation that manufactures and sells shaved

ice machines and other items associated with the snowball business.

------------------------

        [1] The parties have stipulated to the dismissal of Southern
Snow International, Inc.  See Stipulation of Dismissal (docket
entry 33).  In this Opinion, "Southern Snow" is used to refer to
the sole remaining defendant, Southern Snow Manufacturing, Inc.

Southern Snow sold the machine in question from its facility in Belle Chasse, Louisiana, to Misty Trant.  Trant, a Louisiana resident, took sole possession of the machine in Louisiana.  In 2005, Irvin bought and took possession of the shaved ice machine from Trant.

The incident giving rise to this lawsuit occurred on July 25, 2007, in Adams County, Mississippi, when Irvin was attempting to clean the machine in question.  During the cleaning process, Irvin sustained severe injuries to her right hand and fingers.  Irvin filed this action in the Circuit Court of Adams County, Mississippi.  Her First Amended Complaint seeks damages from the defendant pursuant to the Mississippi Products Liability Act, Miss. Code Ann. §11-1-63.  She specifically alleges that Southern Snow was negligent in the design, manufacture, distribution, and sale of the machine.  Further, Irvin asserts that the machine failed to contain adequate instructions and warnings.  Defendant Southern Snow removed the action to this Court on the basis of diversity of citizenship, 28 U.S.C. § 1332(a)(1).  Irvin is a resident citizen of Mississippi.  Southern Snow is a citizen of Louisiana, being incorporated under the laws of Louisiana and having its principal place of business there.  Southern Snow filed a Motion to Dismiss for Lack of Personal Jurisdiction.

## II.  LAW AND ANALYSIS

When a nonresident defendant moves to dismiss for lack of

personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident. <u>Allred v. Moore & Peterson</u>, 117 F.3d 278, 281 (5th Cir. 1997). In a federal diversity suit, the reach of personal jurisdiction over a nonresident defendant is measured by a two-step inquiry. <u>Jobe v. ATR Marketing, Inc.</u>, 87 F.3d 751, 753 (5th Cir. 1996). First, the law of the forum state must provide for the assertion of such jurisdiction. <u>Id</u>. Second, the exercise of jurisdiction under state law must comport with the dictates of the Fourteenth Amendment Due Process Clause. <u>Id</u>.

In construing the law of the forum state, the Court looks to Mississippi's long arm statute, Miss. Code Ann. § 13-3-57, which provides:

> Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi, and shall thereby be subjected to the jurisdiction of the courts of this state.

Irvin alleges that Southern Snow negligently designed, manufactured, distributed, and sold the ice machine that was a direct cause of her injuries sustained in Mississippi. Plaintiff's Brief, p. 3. With regard to the tort prong of the Mississippi long

arm statute, if any element of a tort, including injury, occurred in Mississippi, Southern Snow would be subject to personal jurisdiction in this Court.  Since Irvin's injury occurred in Mississippi, the Court finds that the plaintiff has made a prima facie showing of personal jurisdiction under the tort prong of Mississippi's long arm statute.

Next, the Court considers whether its exercise of personal jurisdiction over Southern Snow would comport with due process. The due process requirement is satisfied when (1) the nonresident has certain "minimum contacts" with the forum state, and (2) subjecting the nonresident defendant to the jurisdiction of the forum would not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  This means that the nonresident must have done some act or acts which make it reasonable for the nonresident to expect to be brought to suit in the forum.  Thus, the focus of the due process inquiry is on whether the nonresident, by virtue of its contact(s) with the forum state, can be said to have "purposely availed [it]self of the benefits and protections of" the forum's laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The Fifth Circuit has recognized that the "minimum contacts" inquiry has been "refined to determine two types of personal jurisdiction - specific and general." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993).

4

> A state exercises "specific jurisdiction" over a nonresident defendant when the lawsuit arises from or relates to the defendant's contact with the forum state. ... In contrast, when the act or transaction being sued upon is unrelated to the defendant's contacts with the forum state, personal jurisdiction does not exist unless the defendant has sufficient "continuous and systematic contacts" with the forum to support an exercise of "general jurisdiction."

Id. (citations omitted). This Court recognizes that even though the concepts of specific and general jurisdiction are separate and distinct, both concepts "will inevitably borrow from one another in deciphering the intent of the defendant's actions as well as the foreseeability that the defendant might be haled into court in this state." Tellus Operating Group, LLC v. R&D Pipe Co., 377 F.Supp.2d 604, 609 (S.D. Miss. 2005).

## A.  SPECIFIC JURISDICTION

Irvin asserts that Southern Snow is subject to specific jurisdiction in Mississippi because it has purposefully availed itself of the benefits and protections of Mississippi law under the stream of commerce theory.  While specific jurisdiction may arise from a single contact with the forum, that single contact must be purposeful and directed at the forum.  See Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990); Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1028 (5th Cir. 1983)(finding specific jurisdiction appropriate predicated on a single purposeful act of the defendant).  The court in Bullion observed:

> It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot

5

> upon the forum state's soil or may arise incident to the commission of a single act directed at the forum.  The appropriate inquiry is whether the defendant purposefully availed [itself] of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws.

Bullion, 895 F.2d at 216.  From this, it follows that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."  Hydrokinetics, 700 F.2d at 1028.  There are two elements that a plaintiff must satisfy to establish specific jurisdiction over a nonresident defendant: (1) the nonresident defendant's contacts with the forum state must be purposeful; and (2) the cause of action must arise from or relate to those contacts.  Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006).

Irvin alleges specific jurisdiction over Southern Snow because it purposefully injected its products into the stream of commerce and was fully aware that its products were being purchased and utilized by Mississippians.  Southern Snow replies that it is not subject to specific jurisdiction in Mississippi because it has not purposefully availed itself of the benefits and protections of the forum.  Southern Snow also asserts that Irvin's cause of action does not arise from any contacts it may have had with the State of Mississippi.

The stream of commerce theory may impute personal jurisdiction over a nonresident defendant that "delivers its products into the

6

stream of commerce with the <u>expectation</u> that they will be purchased by consumers <u>in the forum State</u>." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 298 (1980)(citation omitted)(emphasis added). However, "[t]he placement of the product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 112 (1987).

At the September 19, 2011, hearing, the parties stipulated as follows:

>     (1)  Southern Snow manufacturing, Inc., did not sell, distribute, or ship the shaved ice machine in question to the Plaintiff.
>
>     (2)  The Plaintiff, Andrea Irvin, bought the shaved ice machine in question from a Louisiana resident, Linda Trant, on April 30, 2005, in Monterey, Louisiana.
>
>     (3)  The Plaintiff and her husband, Joe Irvin, traveled to Monterey, Louisiana on April 30, 2005 to take possession of the shaved ice machine, and the Plaintiff and the Plaintiff's husband transported the shaved ice machine from Monterey, Louisiana.

Southern Snow contends "that the mere delivery of products into the stream of commerce does not support the assertion of specific jurisdiction, as the shaved ice machine did not make its way into Mississippi while still in the stream of commerce." Defendant's Rebuttal Brief, p. 3. "The Fifth Circuit is among the circuits that have interpreted <u>World-Wide Volkswagen</u> to hold that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for jurisdiction <u>if</u> the defendant's product made

its way into the forum state <u>while still in the stream of
commerce</u>.'" <u>Ruston Gas Turbines</u>, 9 F.3d at 419 (citing <u>Asahi</u>, 480
U.S. at 111)(emphasis added).  Stream of commerce refers to "the
regular and anticipated flow of products from manufacturer to
distribution to retail sale.  As long as a participant is aware
that the final product is being marketed in the forum state, the
possibility of a lawsuit there cannot come as a surprise."
<u>Ainsworth v. Cargotec USA, Inc.</u>, 2011 WL 1814111, *3 (S.D. Miss.
2011)(citing <u>Asahi</u>, 480 U.S. at 117).

    Southern Snow is the sole manufacturer, distributor, and
seller of its shaved ice machine.  It has customers throughout the
United States, and some international customers, but the sales of
products are made only in Louisiana.  The sales are made only to
in-store customers or through telephone calls from customers.  Once
the sale is complete at Southern Snow's Belle Chasse, Louisiana
office, the purchaser informs Southern Snow whether the customer
will pick up the product in Belle Chasse, Louisiana or will have
the product shipped by a shipper of the purchaser's choice and at
the purchaser's expense.  It is undisputed that Southern Snow does
not have, nor has it had, any business operations, channels of
distribution, networks, agents, employees, or offices in the State
of Mississippi.  It is also undisputed that Southern Snow did not
deliver the shaved ice machine into the stream of commerce in
Mississippi, and had no expectation that Irvin would be purchasing

the machine in question.

The regular and anticipated flow of the product under the stream of commerce theory ended at the retail sale of the ice machine in the State of Louisiana to the original consumer, Trant. See Ainsworth, 2011 WL 1814111, at *3. Since specific jurisdiction is proper only when the proven contacts derive from the defendant's purposeful conduct and not the unilateral activity of the plaintiff, see Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987), the acts of Southern Snow cannot be said to be purposefully directed toward the forum State.   Southern Snow's product made its way into the State of Mississippi only through the unilateral action of the plaintiff. See Seiferth, 472 F.3d at 271. Nor can it be said that Irvin's cause of action arose from or is related to any contacts the defendant may have had with the State of Mississippi.   The plaintiff has therefore failed to establish that specific jurisdiction applies to this case.

## B.  GENERAL JURISDICTION

General jurisdiction exists when a defendant's contacts are unrelated to the cause of action but are "continuous and systematic" and "substantial." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-19 (1984).   The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609

(5th Cir. 2008).  For general jurisdiction to apply, Southern Snow must have a business presence <u>in</u> the forum state.  <u>Access Telecomm., Inc. v. MCI Telecomm. Corp.</u>, 197 F.3d 694, 717 (5th Cir. 1999).

Irvin asserts that Southern Snow purposefully availed itself in Mississippi because in 2009, Southern Snow reported 8% of its gross sales derived from Mississippi residents.  However, while Southern Snow may be doing business <u>with</u> Mississippi, it is not doing business <u>in</u> Mississippi.  <u>See</u> <u>Revell v. Lidov</u>, 317 F.3d 467, 471 (5th Cir. 2002).  These sales all derive from the manufacturing facility in Belle Chasse, Louisiana, not from within the State of Mississippi.

Southern Snow acknowledges that a portion of its products are sold to Mississippi residents, but asserts that these sales are neither continuous nor systematic: "there are 8 months in 2009 where there are '0' sales to Mississippi billing addresses and 5 months in the first 7 months of 2010 where the sales are '0'." Defendant's Rebuttal Brief, pp. 14-15 (citing to Exhibit E to Plaintiff's Brief).  In <u>World Wide Volkswagen</u>, the Supreme Court expressly rejected the idea that a seller of chattels is susceptible to suit wherever a customer requests delivery merely because it is foreseeable.  <u>World-Wide Volkswagen</u>, 444 U.S. at 296. Injecting a product, even in significant volume, into a forum's "stream of commerce," without more, does not lend support to

10

general jurisdiction.  _Bearry,_ 818 F.2d at 375; _accord_ _Alpine View Co. v. Atlas Copco AB,_ 205 F.3d 208, 216 (5th Cir. 2000) (recognizing that this circuit has rejected reliance on a stream-of-commerce theory to sustain general jurisdiction).  Southern Snow has no business presence within the State of Mississippi, and further, its contacts with the forum are neither systematic or continuous.

Finally, Irvin contends that Southern Snow's maintaining a website supports purposeful availment in the State of Mississippi because the website is accessible by Mississippi residents.  However, with regard to utilization of the internet, the Fifth Circuit has adopted the approach set forth in _Zippo Mfg. Co. v. Zippo Dot Com, Inc._, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).  _See_ _Mink v. AAAA Development, Inc._, 190 F.3d 333, 336 (5th Cir. 1999).  This approach divides internet use into a spectrum of three areas.  The first involves doing business over the internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files" over the internet.  _Zippo_, 952 F.Supp. at 1124.  In this situation, personal jurisdiction is proper.  _Id_.  The other end of the spectrum involves the establishment of a passive website that does nothing more than advertise on the internet.  In this situation, personal jurisdiction is not appropriate.  _Id_.  The middle spectrum involves the maintenance of a website that allows a user to exchange

11

information with the host computer.   In this situation, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." Id.

In this case, Southern Snow's website is primarily for advertising purposes.   No products can be ordered or purchased through the website.   In Mink, the Fifth Circuit found that the defendant, AAAA, maintained a website that posted information about its products and services.   The website provided users with a printable mail-in order form, AAAA's toll-free number, a mailing address, and an e-mail address; however, no orders were taken through AAAA's website.   The Fifth Circuit concluded that the website was merely passive advertising and did not create grounds for the exercise of personal jurisdiction.   Mink, 190 F.3d at 337-38.   This Court therefore finds that Southern Snow's use of its website does not constitute purposeful availment in Mississippi. Therefore, this Court finds that Southern Snow is not subject to general jurisdiction in the forum state.

<u>MOTION TO STRIKE</u>

One of the plaintiff's exhibits (Exhibit C) in support of her response to the defendant's motion to dismiss is an article, "Frozen Assets in N.O.," from the publication "New Orleans City Business," dated May 5, 2008.   Included in the article is the statement, "Bubby Wendling, CEO of Southern Snow, said the company

ships equipment and flavors everywhere from Alaska to New Zealand."
The defendant moves to strike the exhibit on grounds that it
contains multiple levels of hearsay.  The plaintiff contends that
the statement is an admission by representative of a party opponent
under Fed.R.Evid. 801(d)(2) or, in the alternative, falls under the
residual hearsay exception set forth in Fed.R.Evid. 807.

The fact that Southern Snow has customers throughout the
United States and overseas has already been established.  As
discussed above, Southern Snow sells its machines only in
Louisiana.  The statement in the article to the effect that
Southern Snow "ships equipment and flavors everywhere from Alaska
to New Zealand" is not competent evidence to refute the facts
established by the defendant.  President John Hagood of Southern
Snow testified under oath in his deposition that the customer
instructs Southern Snow to ship the product by a shipper of the
customer's choice and at the customer's expense.  (Defendant's
Exhibit 4 to Motion to Dismiss, ¶ 21).

The plaintiff asserts that Wendling's statement should be
admitted under Fed.R.Evid. 801(d)(2) - admission by representative
of party opponent.  However, the double hearsay standard set forth
in Fed.R.Evid. 805 requires each level of hearsay to comport with
either an exception or exemption to the hearsay rule in order to be
admitted.  See Hill v. Mansfield, 2007 WL 4532153, at *3 (S.D.
Miss. 2007)(holding a double hearsay statement not admissible, even

though one level satisfied 801(d)(2)(D)).  The plaintiff stops her analysis after the first level of hearsay, that of the declarant.  Irvin asserts no exception or exemption to the second level of hearsay, the author of the article.  Therefore, the article is inadmissible under Fed.R.Evid. 805.

Finally, Irvin attempts to invoke the residual hearsay exception under Fed.R.Evid. 807.  This exception should be "used only rarely, in truly exceptional cases."  <u>United States v. Phillips</u>, 219 F.3d 404, 419 n.23 (5th Cir. 2000).  The proponent "bears the heavy burden to come forward with indicia of both trustworthiness and probative force."  <u>Id.</u>  Rule 807 is not to be considered a catch-all category, but to be a safety valve for truly trustworthy evidence that does not fit under the other specified hearsay exceptions.  An important requirement of the residual hearsay exception is a "built-in requirement of necessity."  <u>United States v. Mathis</u>, 559 F.2d 294, 299 (5th Cir. 1977).  The plaintiff provides no information on the second declarant/author to indicate any significant forms of trustworthiness or probative force.  Further, Irvin offers no evidence that this is truly an exceptional case requiring the article to be admitted.  Irvin has not met her heavy burden under Fed.R.Evid. 807; therefore, because Exhibit C is hearsay, this Court finds the defendant's motion to strike is well taken.

Accordingly,

IT IS HEREBY ORDERED that the defendant Southern Snow Manufacturing, Inc.'s 's Motion to Strike **(docket entry 19)** is GRANTED;

FURTHER ORDERED that the defendant Southern Snow Manufacturing, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction **(docket entry 8)** is GRANTED, and a separate Order of Dismissal shall be entered, dismissing this case without prejudice.

SO ORDERED, this the 12th day of October, 2011.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

15